UNITED STATES of America,
Plaintiff-Appellant,

v.

ARTICLES OF DEVICE CONSISTING OF THREE DEVICES . . . "DIAPULSE," Defendant-Appellee,

and

Dr. Rovelle C. Choate,
Claimant-Appellee.

No. 75–1317.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 9, 1975.

Decided Jan. 12, 1976.
Rehearing Denied March 5, 1976.
See 532 F.2d 1056.

Thomas E. Kauper, Asst. Atty. Gen., Carl D. Lawson, Samuel R. Simon, Antitrust Div., Dept. of Justice, Washington, D. C., Stuart M. Pape, Food & Drug Div., Dept. of Health, Education and Welfare, Rockville, Md., for plaintiff-appellant.

Joseph J. Leary, Frankfort, Ky., Edward H. Stopher, Boehl, Stopher, Graves & Deindoerfer, Louisville, Ky., for appellees.

Before MILLER, LIVELY and ENGEL, Circuit Judges.

MILLER, Circuit Judge.

This action was brought in the district court, Eastern District of Kentucky, to condemn three devices known as Diapulse machines,[1] on the ground that they were misbranded within the meaning of 21 U.S.C. § 352(f)(1), or more specifically, that their labeling failed to bear adequate instructions for use.

On September 20, 1972, the government filed a claim in the district court for forfeiture of the devices. Subsequently, the United States Marshal seized the items pursuant to 21 U.S.C. § 334.[2] No claim having been filed to the devices, the district court entered a default decree of condemnation on January 31, 1973, directing that the devices be destroyed. The default decree, however, was later set aside, and on the ground of excusable neglect, claimant was allowed to file a verified claim to the devices in which it was alleged that he was entitled to possession of the property. Claimant then filed his answer and intervening claim together with written interrogatories directed to the plaintiff, which were later answered. In his answer and intervening claim, claimant admitted that the devices do not bear adequate directions for use within

---

1. The Diapulse machine has been described as a "pulsed high-frequency generator similar to a conventional diathermy unit but with a lower output, intended to create a unique athermal effect. *United States v. An Article of Device . . . Diapulse,* 389 F.2d 612, 614 (2d Cir.), *cert. denied,* 392 U.S. 907, 88 S.Ct. 2059, 20 L.Ed.2d 1365 (1968); *United States v. Diapulse Corp. of America,* 457 F.2d 25, 26 (2d Cir. 1972).

2. The machines were not removed from claimant's office and are in the constructive possession of the Marshal.

the meaning of 21 U.S.C. § 352(f)(1).[3] Nevertheless, claimant alleged that the devices are exempt from the labeling requirement under the provisions of 21 C.F.R. § 1.106(d).[4]

On May 24, 1974, the parties agreed to the following order:

It is hereby agreed to by and between the attorney for the plaintiff and the attorney for the defendant, as evidenced by their signatures hereto, that this cause of action be submitted on the record for final determination, and it is

Ordered that this cause of action be submitted for final determination as presently constituted subject to the answers supplied by the plaintiff to the interrogatories propounded by the intervenor-claimant, and subject to any further orders of the court concerning this matter.

In August 1974, the parties filed cross-motions for summary judgment. The court entered its opinion and order on November 18, 1974, granting claimant's motion for summary judgment and denying the government's motion. In its opinion, the court stated:

**3.** 21 U.S.C. § 352(f)(1) provides, in pertinent part:

A drug or device shall be deemed to be misbranded— . . . (f) Unless its labeling bears (1) adequate directions for use; . . . Provided, That where any requirement of clause (1) of this paragraph, as applied to any drug or device, is not necessary for the protection of the public health, the Secretary shall promulgate regulations exempting such drug or device from such requirement.

**4.** 21 C.F.R. § 1.106(d) provides:

(d) exemption for prescription devices. A device which, because of any potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use is not safe except under the supervision of a practitioner licensed by law to direct the use of such device, and hence for which 'adequate directions for use' cannot be prepared, shall be exempt from section 502(f)(1) of the act [21 U.S.C. 352(f)(1)] if all the following conditions are met: (1) the device is: (i) in the possession of a person (or his agents or employees) regularly and lawfully engaged in the manufacture, transportation, storage or wholesale or retail distributions of such device; or (b) In the possession of a practitioner, such as physicians, dentists, and veterinarians, licensed by law to use or order the use of such device; and (ii) Is to be sold only to or on the prescription or other order of such practitioner for use in the course of his professional practice. (2) The label of the device (other than surgical instruments) bears: (i) The statement 'Caution: Federal law restricts this device to sale by or on the order of a ___,' the blank to be filled with the word 'physician,' 'dentist,' 'veterinarian,' or with the descriptive designation of any other practitioner licensed by the law of the State in which he practices to use or order the use of the device; and (ii) The method of its application or use. (3) Labeling on or within the package from which the device is to be dispensed bears information for use including indications, effects, routes, methods, and frequency and duration of administration, and any relevant hazards, contraindications, side effects, and precautions under which practitioners licensed by law to administer the device can use the device safely and for the purpose for which it is intended, including all purposes for which it is advertised or represented: Provided, however, that such information may be omitted from the dispensing package if, but only if, the article is a device for which directions, hazards, warnings, and other information are commonly known to practitioners licensed by law to use the device. Upon written request, stating reasonable grounds therefor, the Commissioner will offer an opinion on a proposal to omit such information from the dispensing package under this proviso. (4) Any labeling, as defined in section 201(m) [21 U.S.C. 321(m)] of the act, whether or not it is on or within a package from which the device is to be dispensed, distributed by or on behalf of the manufacturer, packer, or distributor of the device, that furnishes or purports to furnish information for use of the device contains adequate information for such use, including indications, effects, routes, methods, and frequency and duration of administration and any relevant hazards, contraindications, side effects, and precautions, under which practitioners licensed by law to employ the device can use the device safely and for the purposes for which it is intended, including all purposes for which it is advertised or represented. This information will not be required on so-called reminder-piece labeling which calls attention to the name of the device but does not include indications or other use information. (5) All labeling, except labels and cartons, bearing information for use of the device also bears the date of the issuance or the date of the latest revision of such labeling.

Turning to the issues raised on the motions for summary judgment, it is noted at the outset that there is no genuine issue as to any material fact. [footnote omitted].

In a footnote, the court stated, *inter alia*:

The question for resolution herein is whether, on the undisputed facts of record, the machines are in violation of the statute and if the exemption provided for in 21 CFR 1.106(d) is applicable.

The government argues that the court misconceived its function in considering the cross-motions for summary judgment as shown by the following statements of the court:

. . . libelant [the government] must establish its contention by a fair preponderance of the evidence.

. . . I find that the government has failed to prove by a fair preponderance of the evidence that the Diapulse devices are not in compliance with 21 CFR 1.106(d)(3), (4) [footnote omitted] and (5). ·

In response, claimant argues that the "agreed order" of May 24, 1974, converted the cross-motions for summary judgment into motions for judgment on an agreed submission, entitling the court to make findings of fact on any disputed factual questions.

■ We believe that claimant's contention is without merit. The parties expressly referred to Rule 56 in their respective motions for summary judgment. Neither referred to the order of May 24. Thus it appears that the parties in effect waived or abandoned the stipulation contained in the May 24 order and elected to invoke summary judgment procedure.

■ The function of a motion for summary judgment is not to permit the court to decide issues of fact, but solely to determine whether there is an issue of fact to be tried. *Aetna Ins. Co. v. Cooper Wells & Co.*, 234 F.2d 342 (6th Cir. 1956); *Nyhus v. Travel Management Corp.*, 151 U.S.App.D.C. 269, 466 F.2d

440 (D.C.Cir. 1972); *United States v. Bissett-Berman Corp.*, 481 F.2d 764 (9th Cir. 1973). "[P]reponderance of the evidence is not the test in a summary judgment proceeding; rather the test is whether a genuine issue of material fact remains after examination of pleadings, depositions, answers to interrogatories, and admissions . on file, together with affidavits." *Ransburg Electro-Coating Corp. v. Lansdale Finishers, Inc.*, 484 F.2d 1037, 1039 (3d Cir. 1973). It follows that the district court's consideration of the preponderance of the evidence in ruling on the cross-motions for summary judgment was erroneous.

■ Instead, the district court should have required the party moving for summary judgment to bear the burden of clearly establishing the non-existence of any genuine issue of fact material to a judgment in his favor. *Berry v. Michigan Bell Telephone Co.*, 319 F.Supp. 401 (E.D.Mich.1967). The evidence should have been construed in the light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

Claimant concedes that the critical issue centers around the proviso to the third condition for the exemption:

(3) . . . Provided, however, that such information may be omitted from the dispensing package if, but only if, the article is a device for which directions, hazards, warnings, and other information are commonly known to practitioners licensed by law to use the device. Upon written request, stating reasonable grounds therefor, the Commissioner will offer an opinion on a proposal to omit such information from the dispensing package under this proviso.

In support of its motion for summary judgment, the government presented the affidavits of two physicians, both of whom stated that the directions for use of the devices "are not commonly known [by] practitioners who are licensed by law to use the devices." In considering these affidavits, the district court stated:

I am unable to accept as a certainty, on the basis of the affidavits herein, that the seized articles are devices for which hazards, warnings and other information are not commonly known to practitioners licensed by law to use them. The court is not bound to accept the opinion of expert witnesses as conclusive.

We are aware that courts are not generally required to accept, without more, the bare opinions of expert witnesses. In the present case, the affidavits of the two physicians, when read in their entirety, are not merely bald assertions of opinions but rather are statements of the witnesses relevant to the factual issue of whether directions for use and warnings as to the hazards involved are commonly known among practitioners licensed to use the devices. Although the physicians did give their opinions, the opinions were accompanied by statements of the physicians' qualifications and other facts on which the opinions were based.[5]

■ On the other hand, claimant made no showing that directions for use of the devices *were* commonly known to practitioners licensed to use them.[6] Instead, claimant presented affidavits showing at best that claimant had used the devices to administer 125,000 treat-ments over a long period of years without any adverse side-effects. On appeal, claimant insists that his use of the device for a long period without any adverse effects is sufficient to satisfy the exemption provisions of the regulations because the purpose of the statute is to exempt labeling which "is not necessary for the protection of the public health." 21 U.S.C. § 352(f).

■ Assuming that claimant has used the device for a long period without adverse effects, this assumption alone in no way suggests that the information for use of the device is commonly known by practitioners licensed for its use. We are not free to disregard the plain meaning of the regulation or the undisputed affidavits of the government that information for use of the device is not commonly known by practitioners licensed to use it.

We have considered other contentions raised on appeal and find them to be without merit.

The judgment of the district court is therefore reversed, and the action is remanded to that court for entry of judgment overruling the claimant's motion for summary judgment and granting the government's motion.

---

**5.** For example, Dr. William D. Paul, one of the physicians stated:

    I am familiar with the Diapulse device through my review of the promotional literature and other literature representing that the Diapulse device is effective for the treatment of a wide variety of diseases and conditions, including bone and tissue healing, and through my research in physical medicine and the evaluation of the physical effects of different diathermy instruments and machines, including short wave diathermy, ultra-high frequency diathermy, ultra-sound diathermy and a device with the same physical characteristics and output of the Diapulse device. On the basis of this review and my general knowledge, training, and experience, I am unaware of any medical evidence which is adequate to establish the effectiveness of the Diapulse device for any medical condition or disease.

    In my opinion, the Diapulse device is not generally recognized or accepted by the medical community as a safe and effective treatment for any medical condition, and the great majority of practicing physicians and other licensed practitioners do not utilize the Diapulse device in their practice. The directions for use of the Diapulse device, including indicated uses, frequency, pulse, and wattage settings, length and duration of treatment, and any relevant side effects and warnings, are not commonly known among practitioners licensed by law to use the device. Indeed, in my opinion, only a very small percentage of physicians and other licensed practitioners are familiar with the Diapulse device at all, much less with the directions and other information on use of the device.

**6.** We believe that claimant had the burden of proving that the devices were exempt from the labeling requirement by showing that directions for their use *were* commonly known by practitioners licensed to use the devices. Hence, it would appear that the government should prevail on the basis of its affidavits even without the statements of the physicians since claimant did nothing to establish facts sufficient to invoke the exemption.