EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff–Appel-
lant,

v.

McCALL PRINTING CORPORATION,
Dayton Press Incorporated, and Interna-
tional Brotherhood of Bookbinders,
Local # 199, Defendants–Appellees.

No. 78–3528.

United States Court of Appeals,
Sixth Circuit.

Argued June 12, 1980.

Decided Oct. 24, 1980.

Abner W. Sibal, Vella M. Fink, Gen. Counsel, Odas Nicholson, Mary–Helen Mautner, E. E. O. C., Washington, D. C., John R. Sweeney, E. E. O. C., Chicago, Ill., for plaintiff–appellant.

Dean E. Denlinger, Smith & Schnacke, Dayton, Ohio, for McCall.

Frank H. Stewart, Taft, Stettinius & Hollister, Cincinnati, Ohio, for Dayton Press.

Peter J. Rakay, Snyder, Hochman, Rakay & Schmidt, Dayton, Ohio, for Local 199.

Before LIVELY, KEITH and KENNEDY, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Plaintiff Equal Employment Opportunity Commission (EEOC) appeals from the dismissal by the District Court of this Title VII action brought on behalf of certain black male employees, alleging discrimination on the basis of their race in violation of 42 U.S.C. § 2000e, *et seq.* The District Court granted motions for summary judgment filed by McCall Printing Corporation and Dayton Press Inc., the employer, and the International Brotherhood of Bookbinders, Local No. 199, the collective bargaining representative, on the ground that the alleged acts of discrimination occurred more than 300 days before the filing of charges with the Equal Employment Opportunity Commission and that the charges therefore were not filed within the period required by 42 U.S.C. § 2000e-5(e).[1]

The charges in this case were filed by 15 black male employees of McCall Corporation who formerly had the job classification of "carloader". Prior to 1966, the "carloader" classification was composed entirely of blacks and employees within that classification were excluded from the mailing and shipping department's formal line of progression, although the classification was included within the department for collective bargaining purposes. In 1966, the carloaders sought access to the line of progression within the department based on seniority dating from the time each carloader hired into the department. In 1966, a settlement agreement was reached giving the carloaders access to the department's line of progression, but limiting their seniority for that purpose to the date of their transfer into the line of progression, that is, the effective date of the agreement, rather than their original dates of hire into the department.

In 1970, a group of male employees, all of whom were white, were transferred back into the mailing and shipping department and given seniority from their original date of entry into that department.[2] Plaintiff claims that at that time the carloaders again requested that their seniority dates be based on their original date of entry into the department but that the request was denied.

In 1971, two actions were filed by certain female employees, some of whom were black, against defendant McCall and defendant Union alleging sex discrimination. This resulted in a conciliation agreement signed by the plaintiffs in that action, the defendants McCall and the Union, and by the EEOC which was approved by the court as a consent decree in 1973. The decree provided, among other things, that the lines of progression within the mailing department be restructured so as to eliminate segregation by sex. The female employees were given full departmental seniority rather than seniority dating from the time of transfer into the new lines of progression. The former carloaders again requested that they be given full departmental seniority and the request was again denied.

Plaintiff concedes this suit is untimely with respect to any action taken by the defendants in 1966 or 1970. Plaintiff argues, however, that the grant of full departmental seniority to the women in 1972, and the denial of the same benefit to the black former carloaders at the same time, are independent acts of discrimination which entitle them to relief. Defendants do not claim that the charges were untimely with respect to the conciliation agreement.

Section 2000e-5(e) of title 42, U.S.C., provides that a charge under this section must be filed with the Equal Employment Opportunity Commission within 180 days of the

---

1. The District Court initially accepted the recommendations of the Magistrate because objections to them were not filed within the time limits of Rule 53(e)(2), Fed.R.Civ.P. Upon motion for reconsideration, the District Court affirmed prior rulings for the reasons stated in the recommendation of the Magistrate.

2. These employees had been transferred out of the department between 1946 and 1966 when the company moved its "pattern operation" from Ohio to Kansas.

alleged unlawful employment practice, except under circumstances in which the aggrieved person has initially instituted proceedings with a state or local agency, in which case the charge must be filed within 300 days of the alleged discriminatory act. The charges in the instant case were filed in October, 1972, less than 180 days after the former carloaders learned of the conciliation agreement with the female workers. The final consent decree was dated March 8, 1973.

The District Court held that because the claim based on the 1972 agreement was not set forth in the charges filed, in the plaintiff's answers to interrogatories requesting the factual basis for the action, or in the reasonable cause determination letter, that claim was beyond the scope of the litigation in which the parties were engaged. The court further concluded that even though the effects of the acts occurring in 1966 and 1970 were perpetuated, plaintiff was barred from relief under the holdings in *Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), and *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). The District Court rejected plaintiff's contention that the 1972 conciliation agreement was an independent act of discrimination on which this action could properly be based. A plaintiff may not obtain relief with respect to time-barred discriminatory acts on the ground that the present effects of past discrimination continued during the limitation period. *United Air Lines, Inc. v. Evans, supra*, 431 U.S. at 558, 97 S.Ct. at 1889.

■ We cannot agree with the District Court's conclusion that the question of whether the 1972 agreement granting back seniority benefits to the female workers was an act of discrimination against the former carloaders was not properly before the court because it was not set forth in the charges filed by the charging party. The charges in this case stated that the discrimination last took place in September, 1972.

The charges, which are identical, each briefly traced the carloaders' history of attempting to obtain full departmental seniority, stated that the former carloader was currently faced with the EEOC conciliation agreement granting female employees departmental seniority, and expressed a sincere hope to join the female employees in receiving full seniority.[3] The rule in this Circuit is that the EEOC's complaint is limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination. *Equal Employment Opportunity Comm'n v. Bailey Co., Inc.*, 563 F.2d 439, 446 (6th Cir. 1977), *cert. denied*, 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 506 (1978). Although the charges do not expressly refer to the 1972 conciliation agreement with the female employees as itself resulting in an act of discrimination toward the former carloaders, the claims of discrimination arising out of that 1972 agreement could reasonably have been expected to grow out of the charges filed. A fair reading of the charges clearly indicates that the former carloaders were claiming that the denial of back seniority benefits to the carloaders, while such benefits were awarded to other groups including most recently the female workers, was a result of discrimination against them on the basis of race. Charges of discrimination, which this Court has noted are often filed by lay complainants, should not result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading. *Tipler v. E. I. duPont deNemours & Co.*, 443 F.2d 125, 131 (6th Cir. 1971). The failure of the charges to refer to the 1972 agreement with the female employees as a separate and distinct act of discrimination does not preclude a claim to that effect at trial.

■ The District Court's conclusion that the allegations regarding the 1972 conciliation agreement were not properly before it

---

3. The charge filed against the union after reciting the same history stated "Further, during August 1972, women of Local 199 received special consideration through the intervention of the EEOC."

was also based on the fact that the reasonable cause determination letter, issued by the EEOC, contained no reference to the 1972 agreement. However, since the 1972 agreement was mentioned in the charges, and since an investigation regarding that agreement could reasonably be expected to grow out of those charges, the failure to refer in the determination letter to the 1972 agreement as a separate and distinct act of discrimination did not preclude the plaintiffs in this case from making that allegation at trial.

Defendants rely heavily on *Equal Employment Opportunity Comm'n v. Bailey Co., Inc., supra,* in support of their contention that claims of discrimination must always be contained in the determination letter issued by the Commission before they may be asserted at trial. The opinion in *Bailey,* in quoting from another case, does include language to the effect that any claim included properly in the reasonable cause determination and offer to conciliate may be the basis of a civil suit, if conciliation on that claim fails. *Bailey, supra,* 563 F.2d at 451. The issue in *Bailey,* however, was whether certain race and religious discrimination charges could reasonably have been expected to grow out of a charge regarding sex discrimination and race discrimination against black women filed with the Commission. The Court in *Bailey* was not faced with a situation in which the challenged allegations although contained in the charges were not contained in the determination letter.

■ It is clear that the recitation of a claim in the determination letter is not a prerequisite to the assertion of such claim by a private litigant. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973). This Court has not been presented with a sufficient justification for applying a different rule with regard to claims made by the EEOC. We therefore decline to hold that the recitation of each claim of discrimination in the EEOC's letter of determination is a rigid prerequisite to the assertion of those claims by the EEOC at trial.

■ Two principal purposes of the determination letter are to notify the employer of the Commission's findings and to provide a common ground for conciliation. *EEOC v. Chesapeake & Ohio Ry. Co.,* 577 F.2d 229 (4th Cir. 1978). Neither of these purposes have been undermined in the instant case. As this Court has noted, the claims of the former carloaders and the specific desired relief was apparent from the charges filed with the EEOC. The employer in this case was not without notice as to the basis of the claims of discrimination as might be the case where charges were filed alleging one type of discrimination while the investigation yielded evidence of a different type of discrimination or evidence of discrimination against a different group of individuals.

■ The developments in the law which took place during the course of this litigation illustrate the inadvisability of a rigid rule requiring the inclusion of all claims in the determination letter. It appears that the EEOC was relying upon cases which had held that the perpetuation of past acts of discrimination by a present seniority system constituted a continuing violation. *E. g., Bailey v. American Tobacco Co.,* 462 F.2d 160 (6th Cir. 1972). It was only after the completion of the determination letter that two decisions by the Supreme Court made it clear that the continuing impact of past discrimination through the effects of a neutral seniority system was not a continuing violation of the Act. *Teamsters v. United States, supra; United Air Lines, Inc. v. Evans, supra.* Consequently, further analysis by the EEOC was required to determine whether a continuing violation existed in this case. Were this Court to require that all theories be set out in the reasonable cause determination, the EEOC could be foreclosed from pursuing litigation despite the fact that there was reasonable cause to believe that the Act had been violated at the time of the determination letter and despite the fact that the claim of unlawful conduct might still be valid under a slightly different legal theory or analysis. Such a rule would have the effect of treating a determination letter with greater formality

than that attached to a pleading. This we decline to do. We believe that the purposes of the determination letter, notice to the employer and a common ground for conciliation, can be served through a requirement that the basic substance of the claim be contained therein. In summary, we conclude that the District Court was not deprived of jurisdiction regarding the claim that a 1972 conciliation agreement between defendants and certain female employees was an act of discrimination solely because the letter of determination issued by the EEOC did not contain that claim.[4] However, the District Court had a valid alternative ground for its dismissal of the action.

■ This Court is sympathetic with the frustration experienced by the former carloaders when female coworkers with apparently similar claims of lack of access to the appropriate lines of progression secured more comprehensive and retroactive relief than the carloaders had obtained six years previously. However, the alleged discrimination against the carloaders in this case occurred in their exclusion from seniority progression in the years prior to 1966, which was only partially remedied by the 1966 agreement, or as a result of seniority awarded the group of white male employees in 1970, and not by reason of the female employees' consent decree. The former carloaders' claims do not fall within the time restraints outlined in 42 U.S.C. § 2000e–5(e). The fact that the residual effects of the alleged discrimination are still felt through seniority status established in 1966 does not render this a continuing act of discrimination under the rule in *United Air Lines, Inc. v. Evans, supra. See also Wiggins v. Spector Freight System, Inc.*, 583

F.2d 882 (6th Cir. 1978); *Rice v. Gates Rubber Co.*, 584 F.2d 135 (6th Cir. 1978); *Trabucco v. Delta Airlines*, 590 F.2d 315 (6th Cir. 1979). Repeated requests for further relief from a prior act of discrimination will not set the time limitations running anew. *Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014 (1st Cir. 1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980).

■ Although the claim of discrimination based on the conciliation agreement was timely under 42 U.S.C. § 2000e–5(e), the conciliation agreement and consent decree cannot form the basis of a valid Title VII action in this case. The fact that the former carloaders were adversely affected by the grant of retroactive seniority to the female employees, of itself, does not constitute an act of discrimination towards them. The conciliation agreement with the female employees resulted from claims that the female employees had improperly been denied access to the appropriate lines of progression. In such a case, retroactive seniority is an appropriate remedy and thus could properly be used as a term in the conciliation agreement and consent decree. *See Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). Unfortunately, wherever one employee is given increased seniority rights, the acquisition of such rights often conflicts with the economic interests of other employees. *Franks, supra*, 424 U.S. at 773–79, 96 S.Ct. at 1268–71, 47 L.Ed.2d 444. This unfortunate consequence does not preclude conciliation agreements or consent decrees granting relief designed to correct the wrongs to which Title VII is directed. *See Franks, supra*, 424 U.S. at 775, 96 S.Ct. at 1269, 47 L.Ed.2d 444.

4. Defendants urge that no references to the conciliation agreement with the female employees as an act of discrimination were made in any of the documents which may be considered by the District Court in determining whether defendants were entitled to judgment as a matter of law under Fed.R.Civ.P. 56(c). Defendants claim that the only reference to the 1972 conciliation agreement was in an affidavit which could not be considered by the court because it was filed out of time and without permission of the court and which was not made out in a form which would be admissible under the Federal Rules of Evidence. The District Court found it unnecessary to rule on the defendants' motion to strike the affidavit in view of the court's reliance on the absence of the claim in the letter of determination. This Court likewise finds it unnecessary to address defendants' claims regarding the affidavit in view of the Court's conclusion that there was no current violation of Title VII as a matter of law, even if the affidavit in question were accepted as valid by the Court.

 Acceptance of plaintiff's theory that a conciliation agreement and consent decree resulting from a Title VII action can itself be an act of discrimination would create major problems. First, if such agreements reactivated all similar previous claims which had resulted in less favorable settlements, the incentive to enter into consent decrees would be greatly undermined. Second, the treatment of a conciliation agreement as a possible act of discrimination in this manner would raise in each case the factual question of whether similarly situated employees received different benefits and thus would immerse the courts in proofs on whether objecting employees had similar claims of discrimination years ago, in the instant case 14 to 15 years ago in 1965 and 1966, for the determination of such stale claims would be required under plaintiff's theory before any conclusion regarding discrimination could be reached. This Court is convinced that the consideration of a conciliation agreement which results in a consent decree as an act of discrimination against employees not benefited by that agreement would create a situation in which each settlement would spark new rounds of litigation, settlement of claims would be discouraged, and the courts would be continually faced with stale claims. Consequently, we hold that conciliation agreements resulting in consent decrees may not be considered independent acts of discrimination, as a matter of law, unless there are allegations of bad faith in making the agreement, that is, allegations that the agreement was not a bona fide attempt to conciliate a claim but rather an attempt to bestow unequal employment benefits under the guise of remedying discrimination.

The plaintiff EEOC has made no such allegation in this case. Indeed, it would be difficult for it to do so in view of the fact that it was apparently instrumental in negotiating the conciliation agreement with the female workers and signed the consent decree.

In the absence of such an allegation defendants are entitled to summary judgment as a matter of law. The District Court's grant of summary judgment in favor of the defendants is affirmed on that basis.

KEITH, Circuit Judge, concurring in part and dissenting in part.

I concur in the first section of the majority opinion which holds that a district court is not deprived of jurisdiction regarding a Title VII claim solely because the EEOC's letter of determination does not explicitly contain the claim. I also agree that a conciliation agreement may not be considered an independent act of discrimination unless there are allegations of bad faith in making the agreement. However, I dissent from the majority's holding that summary judgment was properly granted by the trial court because the EEOC failed to state a Title VII violation.

The EEOC does not allege that McCall's good faith conciliation agreement with female employees was an independent act of discrimination in violation of Title VII. Such an agreement obviously does not violate Title VII. The EEOC alleges that the conciliation agreement, along with other actions of the Company, was evidence of the Company's failure to give its Black male employees the same benefits given to White male and female employees. The EEOC does not attempt to attack the validity of the conciliation agreement granting a class of female employees an opportunity to transfer seniority but rather it specifically alleges that the Company has maintained its seniority system in a discriminatory manner vis-a-vis its Black male employees. The Amended Complaint reads:

> "11. ... Defendants individually and in concert did intentionally engage in unlawful employment practices at the McCall–Dayton facility in Dayton, Ohio, in violation of Section 703(a)(c) and (d) of Title VII in that they did: maintain a system of hiring, job classification and job assignment which discriminates against Blacks on the basis of race."

It is true that a neutral seniority system which perpetuates the effects of an employer's pre–Act discriminatory conduct is immunized from a finding of illegality by reason of Section 703(h) of Title VII, 43 U.S.C. § 2000e–2(h). *Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). *See also United Airlines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). But *Teamsters* also held that 703(h) does not immunize a seniority system which has been negotiated or maintained for illegal purposes. *Id.* at 356, 97 S.Ct. at 1865.

Paragraph 11 of the Amended Complaint clearly alleges that McCall Company has a seniority system which has been maintained so as to produce a discriminatory effect on its Black employees.

The EEOC has not proven that the seniority system has been maintained in a racially discriminatory manner in violation of Title VII. It need not so prove in order to survive a summary judgment motion. *Smith v. Hudson,* 600 F.2d 60 (6th Cir. 1979). Summary judgment is appropriate only where there is no genuine issue as to material facts. In determining whether a genuine issue as to material facts exists, a court must decide if the movant has established his right to summary judgment with such clarity as to leave no room for controversy and that the other party is not entitled to judgment under any circumstances. A court must view the facts most favorably to the party opposing the motion and give that party the benefit of any reasonable inferences to be drawn from the facts. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Equal Employment Opportunity Commission v. Keco Industries, Inc.,* 617 F.2d 443 (1980); *United States v. Articles of Device, etc.,* 527 F.2d 1008, 1011 (6th Cir. 1976).

The uncontroverted evidence does present a genuine issue of material facts. Black employees complained to the Ohio Civil Rights Commission in 1965. The Ohio Commission issued a Complaint which resulted in a settlement between the Commission, the Union and McCall. The settlement did not include any provision allowing Black employees to keep their seniority if they sought entry into the previously closed lines of progression. Local 199 had rejected, by unanimous vote of all white members present, a proposal by the Black carloader members that they enter the lines of progression on an individual basis according to their departmental seniority dates. Subsequently, in 1970, McCall and Local 199 arranged for a group of White male employees in one department, who had previously been employed in one of the lines of progression closed to Blacks, to transfer back to the previously racially–closed department with seniority calculated from their original dates of employment. The Black employees again requested permission to transfer seniority and it was again denied. Then, in 1972, McCall granted a group of employees (women, mostly White) the opportunity to transfer to the previously closed department with full original departmental seniority. The Black employees made a third formal request to also be allowed to retain their seniority on transfer.

Assuming that the reasonable inferences the EEOC draws from these facts are correct, as we must to properly review a summary judgment motion, the injustice here glares at us. Essentially, these Black employees remain lumped together at the bottom of the seniority hierachy while retroactive seniority has been given to White male and female employees. The EEOC alleges that McCall's actions were calculated to obtain this horrendous result. Viewing the facts most favorable to the EEOC, I cannot conclude that summary judgment was properly granted. To do so, I would have to find that the EEOC is not entitled to judgment under any circumstances. I do not suggest that the EEOC would be successful on remand with the facts presented here. But the EEOC should have an opportunity to show that McCall's seniority system is not bona fide because it has been maintained to produce a discriminatory effect on Black employees.

One of the major purposes of Title VII relief, putting discriminatees in their rightful places to the extent possible, has been frustrated here. If the EEOC's allegations are well-founded, we cannot allow employers like McCall to give deserved benefits with one hand and snatch away those benefits with the other hand, albeit in a genteel manner.