**EXECUTIVE ART STUDIO, INC., Plaintiff,**

v.

**CHARTER TOWNSHIP OF KALAMAZOO, Defendant.**

**No. K83–648 CA.**

United States District Court, W.D. Michigan, S.D.

Nov. 18, 1987.

---

Franklin Richard Brussow, Brussow and Krause, Lansing, Mich., for plaintiff.

John H. Bauckham, Bauckham, Reed, Lang, Schaefer & Travis, P.C., Kalamazoo, Mich., for defendant.

## OPINION

BENJAMIN F. GIBSON, District Judge.

This matter is before the Court on cross-motions for summary judgment. The plaintiff, Executive Art Studio, Inc. ("Executive"), challenges the constitutionality of defendant's, Charter Township of Kalamazoo ("Township"), zoning ordinance. It is Executive's position that the ordinance is unconstitutional on its face and as applied to Executive's video business. Plaintiff asserts that there are no material facts at issue and that it is entitled to judgment as a matter of law. Defendant agrees that there are no genuine issues of material fact, but asserts that plaintiff's claims must fail. The Township asserts that its zoning ordinance is constitutional on its face and as applied to plaintiff's business and asks for summary judgment in its favor.

## RELEVANT FACTS

The following facts are undisputed for purposes of this motion and are relevant to the issues before the Court:

On January 26, 1983, Executive purchased land and a building located at 1819 West Main Street, Kalamazoo Township, Michigan. On July 25, 1983, Executive received a certificate of occupancy from the Township authorizing Executive to open and operate a retail sales outlet in a portion of the West Main Street building. On August 2, 1983, Executive commenced operation using the trade name "Velvet Touch Boutique ('Velvet Touch')." The Velvet Touch is an "adult bookstore" which plaintiff contends sells sexually oriented but non-obscene materials. The retail operation occupies roughly 800 square feet of the available 2200 square feet of floor space. Approximately 200 square feet is utilized for restroom facilities, storage, and counter space. The remainder of the floor space was not in use at the time this lawsuit was filed. Plaintiff decided to construct motion picture booths in the unused portion of its floor space. Each booth would contain a coin-operated television set connected to a video cassette player. Each booth was to be used by a single patron for private viewing of sexually explicit movies.

On October 26, 1983, Executive applied to the Township for a building permit and certificate of occupancy to install and operate eight or nine video booths and video viewing rooms in the remaining unused floor space. On November 1, 1983, William Gramps, a Township building official, advised Executive that its request for a building permit and certificate of occupancy was denied for two reasons: 1) there were insufficient off-street parking sites available and 2) the plaintiff needed to acquire "special exception use" approval from the Township Planning Commission ("Commission") prior to conducting the video operation. Gramps also informed plaintiff that its proposed video operation would be considered a motion picture theater and that under the applicable ordinance Executive would be required to provide one parking space per four seats. Thus, for eight booths, two additional parking spaces would be needed for the proposed video booth operation.

On February 2, 1984, Robert Christiansen, ostensibly on behalf of Executive, filed an application for special exception use approval with the Commission and submitted plans for the provision of two additional parking spaces. On April 5, 1984, a public hearing was held at which time the Commission denied plaintiff's application. Several reasons were advanced for the denial. First, the Commission determined that each booth would be considered a separate theater, thus necessitating eight additional parking spaces which were not available on the property. Second, the Commission stated that two of the existing parking spaces were unacceptable. Third, the Commission said that the existing curb cuts on the property were too narrow for safe ingress and egress. The Commission informed plaintiff that, if Executive desired, it could seek a variance from the Zoning Board of Appeals to operate its proposed

business. No appeal was taken. Instead, plaintiff filed this lawsuit pursuant to 42 U.S.C. Section 1983 seeking declaratory, monetary and injunctive relief for alleged violations of the First, Fifth, and Fourteenth Amendments to the United States Constitution.

## STANDARD OF REVIEW

The motions are made pursuant to Rule 56 of the Federal Rules of Civil Procedure, which reads in pertinent part as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

To warrant the grant of summary judgment, the moving party bears the burden of establishing the non-existence of any genuine issue of fact that is material to a judgment in his favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 147, 90 S.Ct. 1598, 1602, 26 L.Ed.2d 142 (1970); *United States v. Articles of Device ... Diapulse*, 527 F.2d 1008, 1011 (6th Cir.1976). Where a law is challenged as facially inconsistent with the Constitution, summary judgment is often appropriate since the issue presented is a legal and not factual question. *Holy Spirit Association for Unification of World Christ. v. Hodge*, 582 F.Supp. 592, 595 (N.D.Tex.1984).

## ANALYSIS

Several of plaintiff's arguments in support of its motion for summary judgment involve the classification of each of Executive's proposed video movie booths as an individual theater under Section 20.-421(B)(2) of the Township Zoning Code. *See* attached Appendix. Executive objects to this classification as arbitrary, capricious and clearly erroneous. Plaintiff seeks a declaratory ruling that the individual video booths fall outside the purview of that section of the ordinance. It is Executive's contention that, under any normal interpretation of the term "theater or other similar use or entertainment," the video operation could not reasonably qualify as the type of business the ordinance was intended to regulate. The defendant asserts that the decision of the Commission classifying each booth as an individual theater was neither arbitrary, capricious nor clearly erroneous.

Executive also argues that the proposed video operation as a whole may not reasonably be classified as a motion picture theater or other similar use for purposes of the zoning ordinance's parking and safety requirements. Although plaintiff has not vigorously advanced this argument in its motion for summary judgment, the Court finds, in the interests of judicial economy, this issue should also be addressed at this time. In reaching this decision, the Court is guided by the well-established axiom of constitutional jurisprudence that resolution of constitutional issues should be avoided if not germane to the litigation before the Court. *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985).

■ Under Michigan law, when construing the provisions of a zoning ordinance, the Court must attempt to discover and give effect to the legislative intent. Where the term at issue is not defined, the Court must turn to the term's common definition. *Talcott v. City of Midland*, 150 Mich.App. 143, 387 N.W.2d 845 (1985). *Talcott* also advises that when determining the legislative intent of a property ordinance, the ordinance, if ambiguous, should be interpreted in a manner most favorable to the property owner. *Id.* 387 N.W.2d at 847. However, the Court must give effect to all words in the ordinance and may not interpret the ordinance in a manner which deprives some terms of any force and effect. *Id.* In determining legislative intent, the Court has read the language of the ordinance in the context of the problems the statute seeks to address, in this case, land use, parking and traffic problems associated with certain types of commercial as well as noncommercial enterprises.

■ The term "theater" is not defined in the Township zoning ordinance. As a re-

sult the Court must look to the term's ordinary meaning since no other source is available from which to discern legislative intent. Upon review of the common definition of theater, the Court finds that there are few if any circumstances in which the booths proposed by Executive could fall within the ordinary meaning of that term. Certainly, in terms of parking and traffic problems, there is nothing from which to infer that the associated problems would be even remotely similar. A theater has been defined as "a building for showing motion pictures; something resembling a theater in form or use; a room, often with rising tiers of seats for lectures, surgicals demonstrations or other assemblies or exhibitions." *Webster's Third New International Dictionary, Unabridged* (4th ed. 1976). The *Random House College Dictionary* defines the term theater as "[a] building, part of a building, or outdoor area for housing dramatic presentations, stage entertainments, or motion-picture shows.... [a] room or hall, fitted with tiers of seats rising like steps, used for lectures, anatomical demonstrations, etc." (Rev. ed. 1980).

Other courts addressing this same issue have concluded that video booths such as those proposed by Executive are not theaters and have held attempts to regulate video booths as theaters invalid. In *Treasure State Sales v. City of Kalispell*, 177 Mont. 174, 580 P.2d 1383 (1978), the Montana Supreme Court held that 15 individual booths, each containing an individual coin-operated movie machine, could not be classified as individual theaters. In that case, the City of Kalispell sought to require individual licences for each booth prior to operation. The issue before the Montana court was whether licensing the booths as theaters was arbitrary or erroneous. The court noted that standard authorities define the term theater as a building specially adapted to dramatic, operatic, or spectacular presentations; a playhouse, or a room with unobstructed views of a platform. The Montana court considered the coin-operated machines in light of the accepted definition of the word theater and concluded that the individual machines at issue could not properly be classified as a theater

under any commonly accepted use of the term. *Id.*

A similar conclusion was reached by the court in *Department of Housing and Community Development of Baltimore v. Ellwest Stereo Theaters, Inc.*, 263 Md. 678, 284 A.2d 406 (App.1971). In *Ellwest*, the court held that premises containing 22 booths, each equipped with an individual coin-operated movie projector and screen and capable of accommodating only one person, was not a "theater" for purposes of a city requirement that each theater be approved by ordinance prior to operation. Like the court in *Treasure State Sales*, 580 P.2d 1383, the Maryland court noted the dissimilarities between the term theater as it is normally used and the proposed video operation. *Id.*, 284 A.2d at 408. As a result of the obvious differences, the court held that the video booths were not theaters for purposes of the ordinance requirement. *Id.*

It is clear that, at least in the context of parking and safety concerns, a theater contemplates a need for parking spaces and additional safety measures greater than necessary in most commercial establishments. There are certain well-known characteristics of theater traffic and safety problems which illustrate this point. In most instances, the exhibitions at theaters or similar buildings involve a large group of people, all entering or leaving the premises at similar time intervals. Often this group will employ many automobiles or other forms of motor vehicles for transport. The large nature of the audience also creates special safety problems relative to fire hazards and traffic congestion. It is reasonable to infer that these traffic and safety factors were prime considerations in the Township's adoption of the special use exception approval system and the associated parking ordinance. In fact the Township itself recognizes the special nature of theaters and similar buildings in the text of its ordinance. *See* Zoning Ordinance §§ 20.422; 20.910 (Appendix). Based on these facts, the Court must conclude that neither each individual video booth nor the video booths as a whole can

reasonably be considered a theater for purposes of the parking ordinance. There is simply nothing from which to impute the parking, traffic, and safety concerns inherent in the operation of a theater or auditorium to each of plaintiff's proposed video booths. In terms of parking needs, the ordinance itself provides that, for businesses not specifically mentioned, the parking requirements for businesses similar in terms of parking requirements should be utilized. Zoning Ordinance § 20.860(11). It is reasonable to infer that "other similar uses or entertainments" must be likewise construed to mean similar in terms of safety, traffic and other land use concerns.

■ Plaintiff also challenges the zoning ordinance on the ground that the ordinance is overbroad. However, the Court finds that plaintiff's challenge on this basis must fail. The Supreme Court has limited the application of the "overbreadth" doctrine to cases in which the overbreadth of a statute is "not only real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma,* 413 U.S. 601, 615–16, 93 S.Ct. 2908, 2917–18, 37 L.Ed.2d 830 (1973). In deciding this issue, if the overbreadth that exists may be cured by case-by-case analysis and application of a limiting construction by the courts, then an ordinance may not be found facially invalid on that basis. *Id.* In the instant case, as demonstrated by this Court's holding, to the extent that the ordinance at issue here is overbroad, it may be cured by a limiting instruction. Accordingly, plaintiff's motion for summary judgment on overbreadth grounds is denied and defendant's motion is granted.

Executive further contends that the special exception use provisions of the ordinance remain constitutionally infirm. It is plaintiff's position that the section of the ordinance is *per se* unconstitutional as a prior restraint which fails to provide the procedural safeguards mandated for the regulation of protected speech. Alternatively, plaintiff contends that the ordinance is both facially vague and vague as it applies to the proposed video operation. The Township contests both contentions and asserts that the ordinance is both facially constitutional and constitutional as applied to plaintiff's business.

■ As to the special exception use approval procedure, Section 20.422(C)(2)(1) and 21.910 of the ordinance, which provide mechanisms for obtaining Commission approval prior to operation of theaters, the Court notes that similarly worded provisions of zoning ordinances have been held unconstitutional on numerous occasions. *See Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150–51, 89 S.Ct. 935, 938–39, 22 L.Ed.2d 162 (1969); *15192 Thirteen Mile Road, Inc. v. City of Warren,* 626 F.Supp. 803 (E.D.Mich.1985). The Court also notes that the lack of timely review procedures and the lack of specific standards in these sections may arguably vest undue discretion in the Commission in derogation of constitutional rights.

However, having found that plaintiff's proposed video operation cannot reasonably be classified as a "theater or other similar use" for purposes of parking and safety requirements, the Court need not address the additional Constitutional arguments raised by plaintiff. "First Amendment involvement in a case does not render inapplicable the rule that a federal court should not extend invalidation of a state statute further than necessary to dispose of the case before it." *Brockett v. Spokane Arcades,* 105 S.Ct. 2794, 2801. Nor need the Court address defendant's motion for summary judgment on plaintiff's constitutional claims. Accordingly, both motions for summary judgment on those issues are denied.

■ Defendant has also filed for summary judgment on plaintiff's Fifth and Fourteenth Amendment Taking Clause claim. After review of the evidence presented, the Court finds that plaintiff has failed to present any evidence to support this claim. There is no evidence presented that plaintiff has been permanently deprived of the use of its property. Nor is there any evidence that plaintiff has exhausted state law remedies to redress any injury which may have occured. Exhaustion of state law remedies is a prerequisite to maintain-

ing a Taking Clause claim in federal court. *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Accordingly, defendant's motion for summary judgment on that issue is granted.

As a final matter, the plaintiff has petitioned the Court for injunctive relief concerning proceedings initiated by defendant in state court. In light of the Court's resolution of the cross-motions for summary judgment, the Court finds that plaintiff's request for injunctive relief must be denied. There is no evidence that the proceedings in state court will in any manner interfere with resolution of the issues before the Court.

## CONCLUSION

In conclusion, Executive's motion for summary judgment is granted in part and denied in part. The Court also finds the Township's motion for summary judgment is granted in part and denied in part. The Court finds that the Township's land use regulations are a valid exercise of the municipality's police powers. *See City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *S & G News, Inc. v. City of Southgate,* 638 F.Supp. 1060 (E.D.Mich.1986). However, the Court finds that the Commission's characterization of plaintiff's proposed video booths, either singularly or collectively, as a "theater or other similar use" for purposes of parking, traffic and safety regulation is arbitrary, capricious and clearly erroneous. Accordingly, plaintiff's motion for summary judgment on that issue is granted. The Township is hereby enjoined from applying those provisions of the zoning ordinance regulating "motion picture theaters or other similar uses" to plaintiff's proposed video operation. The Court further finds that defendant's motion for summary judgment on the issues of overbreadth and regulatory taking is granted. Having concluded that the provisions of the zoning ordinance regulating "theaters or other similar uses" may not reasonably be applied to plaintiff's proposed video operation, the Court need not address the additional constitutional arguments raised by plaintiff or defendant. Summary judgment as to those issues is denied as to both parties. As a final matter, plaintiff's motion to enjoin the pending state court proceeding is denied.

## ·APPENDIX

Relevant provisions of the Kalamazoo Charter Township Compiled Ordinances Zoning Code:

## SECTION 5

### "C" LOCAL BUSINESS DISTRICT

20.421 B. *SPECIAL EXCEPTION USES*

1. * * * *

2. Moving picture theaters, playhouse theaters, commercial auditoriums and other uses, whether incidental or primary, involving similar entertainment or uses.

## SECTION 5

### "C" LOCAL BUSINESS DISTRICT

20.422 C. *CONDITIONS AND LIMITATIONS*

1. * * * *

2. MOVING PICTURE THEATERS, PLAYHOUSE THEATERS, COMMERCIAL AUDITORIUMS AND OTHER USES, WHETHER INCIDENTAL OR PRIMARY, INVOLVING SIMILAR ENTERTAINMENT OR USES.

a. Any such uses must contain adequate free public toilet facilities separately for both men and women.

b. To avoid fire hazard and promote safety, permanent stationary seating affixed to the floor of any indoor theater shall be provided and no movable seats not attached to the floor shall be provided.

c. Adequate off-street parking facilities for such uses equal to not less than one per four seats shall be provided on the site or within 300 feet of the same and no entrance or exit from such parking area shall be so located as to cause a traffic hazard by reason

of its proximity to any intersection, hill, valley or other existing development nor in any manner which would cause a nuisance to adjoining residents or other developments.

d. All facilities and operations shall be in strict compliance with the Michigan State fire regulations which shall, among other things, include a fireproof projection room.

e. A separate exterior entrance and exit shall be provided to such uses opening directly to the outdoors.

\*     \*     \*     \*     \*     \*

j. The principal means of egress and ingress to such uses shall be on a county primary road or a state highway and shall not be over secondary roads or local subdivision roads.

k. Where off-street parking facilities are not substantially greater than the minimum required, a period of not less than 30 minutes shall separate each attraction where only one is featured and each series of attractions where more than one attraction is shown.

l. The Planning Commission shall have the authority to impose additional conditions and restrictions for a particular use where it deems it necessary to protect adjoining property, the traveling public and the health, safety, and welfare of the area.

(added by amend. ord. no. 217 eff. May 27, 1975, amend. by ord. no. 256 eff. May 24, 1979)

SECTION 10

AREA AND OFF–STREET PARKING REQUIREMENTS

*20.860 * * * **

Every building, structure or premises included in this Section shall have off-street adequate parking facilities which are herein defined. The requirements for off-street, adequate parking facilities, 9 feet by 18 feet per parking space, (exclusive of adequate driveways, to be determined by the Zoning Inspector according to standard practices), regardless of whether the same are located or proposed in any A, B, P, C, D or E classification, or any variation of the same, shall be as follows:

\*     \*     \*     \*     \*     \*

3. RETAIL STORES, SUPER MARKETS, DEPARTMENT STORES, PERSONAL SERVICE SHOPS, AND 'C–2' SHOPPING CENTERS—1 parking space for each 100 square feet of area in the basement and on the first floor used for retail sales one space for each 150 square feet of floor area on the second floor used for retail sales 1 space for each 300 square feet of floor area on the third floor used for retail sales, and 1 space for each 400 square feet on any additional floor used for retail sales.

\*     \*     \*     \*     \*     \*

8. THEATRES, AUDITORIUMS, STADIUMS AND CHURCHES—One parking space for each four seats.

\*     \*     \*     \*     \*     \*

11. OTHER USES NOT SPECIFICALLY MENTIONED—In the case of buildings which are used for uses not specifically mentioned, those provisions for off-street parking facilities for a use which is so mentioned and to which said use is similar in terms of parking demand shall apply.

12. MIXED USES IN THE SAME BUILDING—In the case of mixed uses in the same building, the amount of parking space for each use specified shall be provided and the space of one use shall not be considered as providing required spaces for any other use except as to churches and auditoriums incidental to public and parochial schools permitted herein.

13. JOINT USE OF FACILITIES—Provision of common parking facilities for several uses in the same vicinity is encouraged. In such cases the total space requirement is the sum of the individual requirements at the same time of day. The maximum joint requirements will be less than the total individual requirements if the peak needs for the uses occur at distinctly different times of the day from the peaks of the other uses.

14. The minimum off-street parking requirements provided in this Ordinance shall at all times be available for use, without obstruction and without additional rent or charge, except as the same may be included in the basic rental for the principal facility involved.

(ord. no. 15, eff. Apr. 1, 1947, amend: ord. no. 16, eff. Aug. 19, 1947, ord. no. 33, eff. Feb. 1, 1953, ord. no. 60, eff. May 20, 1958, ord. no. 67, eff. Apr. 6, 1959, ord. no. 69, eff. Aug. 1, 1959, ord. no. 73, eff. June 5, 1960, ord. no. 74, eff. Aug. 22, 1960, ord. no. 78, eff. Aug. 18, 1961, ord. no. 89, eff. Mar. 26, 1962, ord. no. 111, eff. Aug. 1, 1964, ord. no. 119, eff. Sept. 13, 1965, ord. no. 121, eff. Nov. 8, 1965, ord. no. 139, eff. Sept. 25, 1967, ord. no. 153, eff. May 26, 1969, ord. no. 185, eff. Jan. 10, 1972, ord. no. 188, eff. May 8, 1972, ord. no. 217, eff. May 27, 1975)

## SECTION 11.5

### SPECIAL EXCEPTIONS

20.910  In order to make this Ordinance a flexible zoning control and still afford protection of property values and orderly and compatible development of property within the township, the Planning Commission, in addition to its other functions, is authorized to approve the location of certain uses within the various zone classifications, which uses are designated in this Ordinance as special exception uses.

Such special exception uses have been selected because of the unique characteristic of the use which, in the particular zone involved, under certain physical circumstances and without proper controls and limitations, could cause it to be incompatible with the other uses permitted in such zoning district and accordingly detrimental thereto.

With this in mind, such special exception uses are not permitted to be engaged in within the particular zone in which they are listed unless and until the Planning Commission, in its absolute discretion, is satisfied that the same, under the conditions, controls, limitations, circumstances and safeguards proposed therefor and imposed by said Board (Commission) would be compatible with the other uses expressly permitted within said district; would not, in any manner, be detrimental or injurious thereto; would not, in any manner, be detrimental or injurious to the use or development of adjacent properties, to the occupants thereof or to the general neighborhood, would promote the public health, safety, morals and general welfare of the community; would encourage the use of lands in accordance with their character and adaptability; and that the standards required by the Board (Commission) for the allowance of such special exception use can and will, in its judgment, be met at all times by the applicant.

(added by amend. ord. no. 190 eff. Nov. 13, 1972, amend. by ord. 256 eff. May 24, 1979)

20.920  A.  SPECIAL EXCEPTION PROCEDURE

1.  All applications for special exception use permits shall be filed with the Township Clerk and shall include all pertinent plans, specifications and other data upon which the applicant intends to rely for a special exception use permit.

2.  The Township Planning Commission shall, upon receipt of a written application in proper form, schedule and hold a public hearing published in a newspaper circulated within the township and by a similar notice mailed or personally delivered to the owners of property for which approval is sought to all persons to whom real property is assessed within 300 feet of the boundaries of the subject property, and to the occupants of all structures within 300 feet thereof not less than 5 nor more than 15 days before the date of such hearing.  (amend. by ord. no. 256 eff. May 24, 1979)

3.  Following such hearing, said Board (Commission) shall either grant or deny a permit for such special exception use and shall state its reasons for its decisions in the matter.  All conditions, limitations and requirements upon which any such permit is granted

shall be specified in detail by said Board (Commission) in its decision and shall be filed with the zoning enforcement officer of the township.

4. The plot plan and specifications, and all conditions, limitations and requirements imposed by the Planning Commission shall be incorporated as a part of the special exception permit and violations of any of these at any time will cause revocation of said permit and said special exception use shall cease to be a lawful use.

(amend. by ord. no. 256 eff. May 24, 1979)

5. Any property which is the subject of a special exception permit, which has not been used for a period of 6 months (without just cause being shown which is beyond the control of the owner and which is acceptable to the Planning Commission), for the purpose for which such special exception was granted, shall thereafter be required to be used for only permissible uses set forth in the particular zoning classification and the permit for such special exception use shall thereupon terminate.

(added by amend. ord. no. 190 eff. Nov. 13, 1972, amend. by ord. no. 256 eff. May 24, 1979)

\*   \*   \*   \*   \*   \*

20.939 (I) VARIANCES

The Zoning Board of Appeals shall have the right and authority to grant variances from the foregoing conditions and limitations where particular circumstances or hardship may exist, the spirit and intent of the provisions to protect the neighborhood from devastation are still complied with and substantial justice would thereby be effected.

(added by amend. ord. no. 207 eff. Sept. 23, 1974)

SECTION 17

VIOLATION, PENALTY

21.200 Any person, firm or corporation who violates, disobeys, omits, neglects or refuses to comply with or who resists the enforcement of any of the provisions of this Ordinance shall be fined not more than One Hundred Dollars ($100.00) for each offense. Each day that a violation is permitted to exist shall constitute a separate offense. On imposition of any such fine the Court shall have power and authority to make a further order and judgment that any such persons so convicted shall be imprisoned in the County Jail until such fine and costs shall be paid, and such imprisonment shall not exceed thirty days (30).

(ord. no. 15 eff. Apr. 1, 1947, amend. by ord. no. 22 eff. Sept. 20, 1949)

SECTION 18

21.210 Should any section, clause, or provision of this Ordinance be declared by the courts to be invalid, the same shall not affect the validity of the Ordinance as a whole or any part thereof, other than the part so declared to be invalid.

(ord. no. 15, eff. Apr. 1, 1947)