UNITED STATES of America, Plaintiff,

v.

CENTRAL STATE BANK; State Savings Bank; and Harry C. Calcutt, Defendants.

No. G82–72 CA7.

United States District Court, W.D. Michigan, S.D.

June 7, 1983.

Robert E. Hauberg, Dept. of Justice, Antitrust Div., Special Regulated Industries Section, Washington, D.C., for plaintiff.

Thomas J. McNamara, Warner, Norcross & Judd, Grand Rapids, Mich., Jack E. Boynton, Murchie, Calcutt & Sondee, Harry C. Calcutt, Traverse City, Mich., for defendants.

OPINION

BENJAMIN F. GIBSON, District Judge.

BACKGROUND

This case is before the Court pursuant to defendants' motion for judgment on the pleadings and plaintiff's motion for partial summary judgment. Plaintiff, the United States of America, filed this action under § 1 of the Sherman Act, 15 U.S.C. § 1. In the complaint, plaintiff essentially alleges that defendant Harry C. Calcutt acquired control over defendant Central State Bank ("Central") while simultaneously controlling defendant State Savings Bank ("State"). Calcutt's acquisition of control over State allegedly eliminated competition between the two banks and created an unreasonable restraint of trade in violation of Section 1

of the Sherman Act. Each of the motions will be discussed separately.

### MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants' motion for judgment on the pleadings is premised on two grounds. First, defendants claim that this court lacks subject matter jurisdiction under Fed.R. Civ.P. 12(b)(1) because the complaint fails to allege the required jurisdictional nexus between the conduct complained of and interstate commerce. Second, defendants claim that the complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted because: 1) as to all defendants, the complaint alleges only a "bare bones conspiracy"; and 2) as to defendant State, the only conduct allegedly undertaken by defendant State is privileged under the *Noerr-Pennington* doctrine.

Since this is a Fed.R.Civ.P. 12(c) motion for judgment on the pleadings and since the Court has considered only those matters which are set forth in the pleadings, the Court's inquiry at this point is merely whether the challenged pleading sets forth allegations sufficient to make out the elements either of subject matter jurisdiction or of a right to relief. In making this determination, the allegations of the pleading are taken at "face value," *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972). The Court will assume the truth of all well-pleaded factual allegations, and the complaint will be liberally construed in favor of the party opposing the motion. *Davis H. Elliot Co. v. Caribbean Util. Co.,* 513 F.2d 1176, 1182 (6th Cir.1975). Moreover, the Court will indulge all reasonable inferences which might be drawn from the pleading. *Garrett v. Bamford,* 538 F.2d 63, 65 (3d Cir.1976); *Weisbord v. Michigan State Univ.,* 495 F.Supp. 1347, 1351 (W.D. Mich.1980). Provided the claim for relief

fulfills the requirements of Fed.R.Civ.P. 8(a), it shall "not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### A. JURISDICTIONAL NEXUS

▮ In order for the Court to exercise subject matter jurisdiction under § 1 of the Sherman Act, the plaintiff must allege facts in his complaint showing that defendant's conduct is actually prohibited by § 1; the Court possesses subject matter jurisdiction if the complaint alleges either that defendant's activities, although local in nature, substantially affected interstate commerce or that defendant's activities occurred in the flow of interstate commerce. *McLain v. Real Estate Board of New Orleans, Inc.,* 444 U.S. 232, 241–42, 100 S.Ct. 502, 508, 62 L.Ed.2d 441 (1980). A complaint adequately alleges jurisdiction under the "in the flow of commerce" test if it alleges facts which demonstrate that the defendant's activities restrained goods or services within the flow of interstate commerce or were "integrally related" to a interstate transaction. *Id.* at 244, 100 S.Ct. at 510. Likewise, under the "affects commerce" test, a complaint adequately alleges jurisdiction by setting forth facts which identify the relevant aspects of interstate commerce and demonstrate a nexus with interstate commerce showing that defendant's activities substantially and adversely affected the interstate commerce involved. *Id.* at 242, 100 S.Ct. at 509.

▮ The Court has reviewed the Government's complaint and has determined that the factual allegations contained therein are sufficient to invoke this Court's subject matter jurisdiction pursuant to § 1 of the Sherman Act. The factual allegations of paragraphs 17, 18, 28, and 30 [1] of the com-

---

1. Paragraphs 17, 18, 28, and 30 of the complaint read as follows:

    17. Central and State regularly utilize interstate communications, including the mails, telephone, and telegraph, to conduct business with customers and with banks located in states other than Michigan. Customers of Central

    and State regularly utilize interstate communications, including the mails, telephone, and telegraph, to carry on their business with, apply for, and obtain loans and other services provided by these banks. Both banks cash out-of-state checks and make investments in out-of-state activities. Both banks have correspon-

plaint satisfy both the "in the flow of commerce" and the "affects commerce" tests. Accordingly, defendants' motion for judgment on the pleadings for lack of subject matter jurisdiction is denied.

## B. FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### 1. "Bare Bones Conspiracy"

■ Defendants urge that the Government's complaint be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants argue that the complaint alleges only "a bare bones statement of conspiracy."

Defendants' argument is without merit. Although it is well-established that a "bare bones statement of conspiracy" will not withstand a motion for dismissal, *Heart Disease Research Foundation v. General Motors Corp.*, 463 F.2d 98, 100 (2d Cir.1972), the complaint which is the subject matter of this controversy contains much more than just a "bare bones" statement. In order to support a claim under § 1 of the Sherman Act, a complaint must allege, with some definiteness, the nature of the claimed conspiracy to restrain trade and the acts done in furtherance of the conspiracy. *Dowing v. U.S.*, 476 F.Supp. 1018, 1022 (D.Mass.1979). The Government's complaint adequately meets this criteria and will not be dismissed on this ground.[2]

### 2. Noerr-Pennington

■ Defendants also argue that the Government's complaint must be dismissed as to defendant State because the only ac-

---

dent accounts with out-of-state banks. Each of the defendant banks is engaged in and their activities substantially affect interstate commerce.

18. Depository institutions are highly regulated at both the federal and state levels. Among other things, this regulatory scheme imposes restrictions on the formation and geographic expansion of national and state banking associations. As a result, the ability of additional banks to enter a given geographic area is seriously limited. For example, Section 171 of the Michigan Banking Code of 1969 precludes any bank from branching into any city or village in which a state or national bank or branch thereof is then in operation, thus eliminating a significant number of cities or villages into which a bank can branch.

28. Defendants and other co-conspirators have engaged in an unlawful contract, combination and conspiracy in unreasonable restraint of the above-described interstate trade and commerce in violation of Section 1 of the Sherman Act, as amended (15 U.S.C. § 1).

30. In furtherance of the above-described violation, defendants and other co-conspirators have done the following acts, among others:

(a) On or about February 3, 1976, a co-conspirator voluntarily and knowingly executed an irrevocable proxy to Calcutt, giving Calcutt the power to vote not only those shares in Central which the co-conspirator then owned, the exact amount being unknown to plaintiff, but also any shares which the co-conspirator might acquire in the future. Between 1976 and 1978 numerous blocks of stock in Central were acquired by the co-conspirator and then transferred to Calcutt or other co-conspirators.

(b) On or about October 26, 1978, State, having received notice of an application which Central had filed with the Michigan Financial Institutions Bureau to open a branch in Elberta, and acting under the direction of Calcutt, protested with the Michigan Financial Institutions Bureau, objecting to the establishment of the branch. The Michigan Financial Institutions Bureau scheduled a hearing on the matter.

(c) On or about January 29, 1979, Calcutt, acting on his own behalf, acquired sufficient additional shares of stock in Central to give him and other co-conspirators absolute control over Central.

(d) On or about February 13, 1979, Calcutt was formally elected Secretary of Central's Board of Directors by Central. Calcutt continued to hold his position as President, a director and the majority shareholder of State.

(e) Following Calcutt's acquisition of control over Central and his election as Secretary of Central's Board of Directors, Central effectuated various changes. For example, on or about March 2, 1979, Central's attorneys notified the Michigan Financial Institutions Bureau of a possible delay in Central's pursuit of its Elberta branch application due to the change in management. On or about June 13, 1979, Central, acting through its Board of Directors, voted to abandon that branch application. On or about June 26, 1979, the application was dismissed.

2. Paragraph 30 of the complaint adequately alleges the nature of the claimed conspiracy to restrain trade and the acts done in furtherance of the conspiracy.

tion which the complaint alleges was undertaken by defendant State—the filing of a protest with the Michigan Financial Institutions Bureau against Central's application to establish a branch in Etherta, Michigan—is allegedly protected under the *Noerr-Pennington* doctrine. *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The *Noerr-Pennington* doctrine simply states that the Sherman Act does not prohibit attempts to induce favorable governmental action, even for an anti-competitive purpose. *Id.* The *Noerr-Pennington* doctrine, however, does not protect concerted efforts to influence governmental action which are "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 511, 92 S.Ct. 609, 611, 612, 30 L.Ed.2d 642 (1972), *quoting Noerr,* 365 U.S. at 144, 81 S.Ct. at 533. Whether the action allegedly undertaken by State is protected by the *Noerr-Pennington* doctrine or whether it fits within the exception to the *Noerr-Pennington* doctrine is a question of fact. As such, its resolution must await the trial of this matter; accordingly, defendants' motion for judgment on the pleadings as to defendant State is denied. Of course, this denial does not preclude defendants from litigating this issue during the course of the trial.

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff has filed a motion for partial summary judgment on two issues in this action. First, plaintiff requests a ruling that the defendants are in and their activities affect interstate commerce. Second, plaintiff requests a ruling that, as a matter of law, defendants are precluded in this lawsuit from raising the defense that the affiliation of State and Central has benefited the "convenience and needs" of the community served by the banks.

In considering plaintiff's requests for partial summary judgment, the Court notes that summary judgment is appropriate only where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son Inc.,* 668 F.2d 905, 908 (6th Cir.1982), *see Willetts v. Ford Motor Co.,* 583 F.2d 852, 854 (6th Cir.1978); *Felix v. Young,* 536 F.2d 1126, 1130 (6th Cir.1976). The function of a motion for summary judgment is not to allow the court to decide issues of fact but rather to determine whether there is an issue of fact to be tried. *United States v. Articles of Device, Etc.,* 527 F.2d 1008, 1011 (6th Cir.1976); *Aetna Ins. Co. v. Cooper Wells & Co.,* 234 F.2d 342, 345 (6th Cir. 1956). The moving party bears the burden of clearly establishing the non-existence of any genuine issue of fact material to a judgment in his favor. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Articles,* 527 F.2d at 1011. In determining whether there are genuine issues of fact warranting a trial, the evidence will be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir.1962). If a disputed question of fact remains, the motion for summary judgment must be denied. *Atlas,* 668 F.2d at 908; *Felix,* 536 F.2d at 1030; *Bohn,* 303 F.2d at 427.

■ In regard to the first ruling requested by plaintiff, that defendants are in and their activities affect interstate commerce, the resolution of this question must await the trial of this matter. The resolution depends upon a factual development of the scope of defendants' activities. Therefore, plaintiff's motion for partial summary judgment in regard to this issue is denied.

■ Plaintiff's second request for partial summary judgment concerns whether defendants may assert a "convenience and needs" defense in the present lawsuit. The affirmative defense challenged by plaintiff

is actually a provision of the Change in Bank Control Act (the "CBCA"), 12 U.S.C. § 1817(j)(7)(B). Whether this defense is applicable to the present action presents a novel question of law and requires some background explanation.

Congress has established a comprehensive scheme for the regulation of banks which is composed of the following statutes: 1) the Bank Holding Company Act (the "BHCA"), 12 U.S.C. § 1841, et seq.; 2) the Bank Merger Act (the "BMA"), 12 U.S.C. § 1828; and 3) the Change in Bank Control Act (the "CBCA"), 12 U.S.C. § 1817(j). These three banking statutes require a person seeking to acquire a bank through either merger, consolidation, or acquisition, to register with the prescribed federal banking agency which will either approve or disapprove the proposed transaction. The language of these three statutes incorporates, with a slight modification, the antitrust tests of both § 7 of the Clayton Act, 15 U.S.C. § 18, and § 1 of the Sherman Act, 15 U.S.C. § 1; the modification states that if the transaction has an anticompetitive effect, it may still be justified if the anticompetitive effect is clearly outweighed, in the public interest, by the probable beneficial effect of the transaction in meeting the convenience and needs of the community to be served. This modification, known as the "convenience and needs" defense, is the defense which defendants wish to assert.

In the instant situation, defendant Calcutt acquired a sufficient number of shares of Central to effect a change in its control. Normally, such a transaction would have been governed by the CBCA which applies to any "person" who seeks to acquire control of a bank through assignment, pledge, transfer, purchase, or other disposition of the voting stock of the bank. 12 U.S.C. § 1817(j)(1). Defendant Calcutt's transaction, however, was not regulated by the CBCA because it occurred before the effective date of the CBCA. Now, defendants wish to assert the defense that certainly would have been available to Mr. Calcutt had his transaction been subject to regulation by the CBCA.

By passing the CBCA, the BMA, and the BHCA, Congress intended to create uniform standards for the consideration of the anticompetitive effects of bank mergers, acquisitions, and consolidations. *See Mercantile Texas Corp. v. Board of Governors,* 638 F.2d 1255, 1261 (5th Cir.1981); *County Nat'l Bancorporation v. Board of Governors,* 654 F.2d 1253, 1258, 1259 (18th Cir.1981). Moreover,

> [b]y creating the "convenience and needs" of the community" exception, Congress again recognized that some [bank] mergers [, acquisitions, and consolidations] that violate the antitrust laws are nevertheless in the public interest and that strict application of the antitrust laws by the courts is inappropriate for the banking industry. The exception requires the courts to mitigate the harsh consequences of strictly applying the antitrust laws.

*Id.* at 1259 (although the court was directing its remarks to the BMA, in light of the similarity among the BMA, the BHCA, and the CBCA, the court's rationale is equally applicable to the latter two statutes). The plain language of the banking statutes supports the proposition that

> Congress intended that a defense or justification be available once it had been determined that a transaction would have anticompetitive effects, as judged by the standards normally applied in antitrust actions.

*United States v. First City Nat'l Bank of Houston,* 386 U.S. 361, 364, 87 S.Ct. 1088, 1091, 18 L.Ed.2d 151 (1967). Thus, although the instant situation arises under the provisions of § 1 of the Sherman Act, given the Congressional intent manifested in the enactment of the BMA, the BHCA, and the CBCA, defendants may assert a "convenience and needs" defense in this lawsuit.

For all of the reasons stated in this Opinion, the Court makes the following determinations: 1) Defendants' motion for judgment on the pleadings for lack of subject matter jurisdiction is denied; 2) Defendants' motion for judgment on the pleadings on the basis that the complaint alleges only a "bare bones statement of conspiracy" is denied; 3) Defendants' motion for judgment on the pleadings as to defendant State on the basis that the action allegedly undertaken by defendant State is protected

under the *Noerr-Pennington* doctrine is denied. (Defendants may raise this issue during the course of the trial); 4) Plaintiff's motion for partial summary judgment seeking a ruling that defendants are in and their activities affect interstate commerce is denied; and 5) Plaintiff's motion for partial summary judgment seeking a ruling that defendants are precluded from raising a "convenience and needs" defense in this lawsuit is denied.