**Steven P. GIANAKAS, Plaintiff,**

v.

**Marvin A. SIENSA, David McCoy, John Peters, George J. Paetow, K. Rajkumar, Edward J. Puschak, Ted Argiris, Walter E. Simons, and First State Bank & Trust Company of Palos Hills, Defendants.**

No. 86 C 6201.

United States District Court, N.D. Illinois, E.D.

Nov. 14, 1986.

Edward F. Ruberry, William J. Mullins, Ruberry, Palmer, Phares & Smetana, Chicago, Ill., for plaintiff.

Warren L. Swanson, Thomas A. Brown, Swanson and Brown, Palos Heights, Ill., for defendant George J. Paetow.

James S. Montana, Jr., John A. Dienner, III, Pierce, Lydon, Griffin & Montana, Chicago, Ill., for Marvin A. Siensa, George J. Paetow and K. Rajkumar.

Fredric G. Novy, James M. Crowley, Garvey & Novy, Chicago, Ill., for Ted Argiris and Walter E. Simons.

### MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Defendants' motion to dismiss the first amended complaint presents two issues for

decision: one an issue of first impression in this district, the other this court's first opportunity to discuss the adequacy of RICO claim under the Seventh Circuit's most recent RICO analysis. *Morgan v. Bank of Waukegan,* 804 F.2d 970 (7th Cir. 1986); *Lipin Enterprises v. Lee,* 803 F.2d 322 (7th Cir.1986).

This action began on August 20, 1986 when plaintiff filed an emergency motion seeking a temporary restraining order ("TRO") prohibiting defendants from transferring any stock they owned in First State Bank of Palos Hills (hereinafter "Palos Bank"). Judge Bua, sitting as emergency judge, granted the TRO prohibiting the transfer of Palos Bank stock by defendants until September 2, 1986. By the agreement of the parties the TRO was voluntarily extended and continued until September 15, 1986. At that time, the TRO was allowed to lapse and plaintiff filed a first amended complaint renewing his motion for injunctive relief.

The first amended complaint has five counts. Count I is a claim brought for alleged violations of the Change in Bank Control Act of 1978 ("CBCA"), specifically alleging that defendants violated the notice provisions of 12 U.S.C. § 1817(j)(1). Count II is a state law claim brought pursuant to the pendent jurisdictional powers of this court and alleges violations of the reporting provisions of the Illinois Banking Act. Count III alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Count IV is a state law breach of contract action which seeks specific performance. Count V is another state law claim alleging intentional interference with prospective economic advantage.

Defendants Siensa, McCoy and Rajkumar have moved to dismiss Count I and Count III of the complaint, the counts upon which federal jurisdiction is based.[1] For the following reasons, the defendants motion to dismiss Counts I and III is granted and the complaint is dismissed in its entirety.

## DISCUSSION

This action evolves from a struggle to control the Palos Bank. Plaintiff seeks to purchase a controlling interest in Palos Bank, but has been allegedly stymied in his efforts by the actions of the defendants. Plaintiff contends that all of the individual defendants, except Siensa, signed a letter of intent in early 1985 to sell their stock holdings in the Palos Bank to plaintiff. It is further alleged that defendants Siensa and McCoy, along with another stockholder, entered into a stock purchase agreement in November of 1985 whereby plaintiff would purchase Siensa's and McCoy's stock holdings in the Palos Bank. It is alleged that all of the defendants have failed to fulfill these commitments.

Plaintiff also claims that for all times relevant, the defendants—Siensa, McCoy, Peters, Rajkumar, Puschak and Argiris, collectively referred to by plaintiff as the "Siensa Group"—have pooled their stock ownership in Palos Bank so that they could effectively control the operation of the bank. Plaintiff alleges that by the end of November, 1985 the Siensa Group, collectively, had accumulated 52.3% of the outstanding shares of Palos Bank.

Accepting these allegations as true, as the court must, the actions of the Siensa Group (assuming that the actions of the individual defendants can be properly attributed to and characterized as a single coalition or group) would have represented a change in control of a federally insured financial institution, triggering the reporting and approval requirements of the CBCA. Specifically, section 1817(j)(1) requires in pertinent part that:

> No person acting directly or indirectly or through or in concert with one or more other persons, shall acquire control of any insured bank through a purchase, assignment, transfer, pledge, or other

---

**1.** The original motion to dismiss was filed solely by defendant Siensa. In the renewed motion to dismiss the intervening first amended complaint, Siensa has been joined by McCoy and Rajkumar.

disposition of voting stock of such insured bank unless the appropriate Federal banking agency has been given sixty days prior written notice of such proposed acquisition.... [2]

Plaintiff alleges in Count I of the complaint that defendants, as the Siensa Group, did not, among other things, comply with the 60–day notice provision as required by the CBCA. For the alleged violations of the CBCA, plaintiff seeks injunctive relief, the rescission of defendants' purchases of Palos Bank stock, removal of the defendants as officers and directors of the Palos Bank and the appointment of a receiver to operate and manage the affairs of the Palos Bank.

Defendants urge the court to dismiss this claim on the grounds that the complaint does not sufficiently plead supporting facts and that plaintiff is without standing to enforce the provisions of the CBCA. The court concurs with the later contention and holds that the CBCA does not provide for a private right of action.

Because Congress did not expressly provide for a private right of action, this court's analysis is governed by the four prong test articulated by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). Consequently, to determine whether there should be an implied private right of action under the CBCA where congress did not expressly provide for such actions, the court must consider whether: 1) the plaintiff is a member of a class for whose especial benefit the statute was enacted; 2) there is any explicit or implicit indication of legislative intent to create such a private right of action; 3) it is consistent with the legislative scheme to imply such a right for the plaintiff; and 4) the cause of action is one traditionally relegated to state law, such that it would be inappropriate to infer a cause of action based solely on the federal law. Each of these factors is not entitled to equal weight, "[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979).

The question of whether a private right of action exists under the CBCA has apparently never before been raised in this district nor has it been addressed directly by the Seventh Circuit. The issue has, however, been raised in other district and appellate courts, but without uniform outcomes. In reviewing the prior decisions (a very limited universe of cases) in this area, the court was able to find only two decisions which have held that a private right of action exists for the enforcement of the CBCA provisions.[3] The court does not

---

**2.** For the purpose of this subsection the term "person" means "an individual or a corporation, partnership, trust, association, joint venture, pool, syndicate, sole proprietorship, unincorporated organization, or any other form of entity not specifically listed herein" and the term "control" means "the power, directly or indirectly, to direct the management or policies of an insured bank or to vote 25 per centum or more of any class of voting securities of an insured bank." 18 U.S.C. § 1817(j)(8)(A) and (B).

**3.** Plaintiff cited a number of cases where a private right of action was "presumed" to exist. These cases are of absolutely no precedential value for the very reason that they did not address the fundamental issue of whether a private cause of action was proper under the CBCA. The most likely conclusion that can be drawn from these cases is that the issue of private actions was not raised by the parties and, therefore, never considered by the courts. *See United States v. Central State Bank*, 564 F.Supp. 1478, 1483 (W.D.Mich.1983) (merely allowed the defendants to assert as an affirmative defense to an antitrust action the fact that the defendants anticompetitive actions were justified under the CBCA); *Citizens First Bancorp, Inc. v. Harreld*, 559 F.Supp. 867, 873–74 (W.D. Ky.1982) (suit alleged violations of the 60–day notice provision, but the court found no violation and did not address the question of whether a private right of action existed); and *Riggs National Bank v. Allbritton*, 516 F.Supp. 164, 175–80 (D.D.C.1981) (also did not expressly consider whether a private cause of action was properly entertained). Moreover, plaintiff's citation of *Pacific Realty Trust v. APC Investments, Inc.*, 685 F.2d 1083, 1087 (9th Cir.1982) as supporting authority, a case which, again, did not address the issue of the propriety of private enforcement actions for violations of the CBCA, is undermined by the fact that the Ninth Circuit expressly rejected a private right of action six years earlier in *Harmsen v. Smith*, 542 F.2d 496,

think that these cases, *Mid-Continent Bancshares, Inc. v. O'Brien,* [1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,734 at 93,707, 93,709 (E.D.Mo.1981) [Available on WESTLAW, DCTU database] and *First Alabama Bancshares, Inc. v. Lowder,* [1981 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,015 at 91,257–58 (N.D.Ala.1981), were properly decided under the *Cort v. Ash* four pronged test.

Both the *O'Brien* and *Lowder* opinions concluded that bank holding companies (basically shareholders) are the intended beneficiaries of the CBCA act, thereby satisfying the first factor in the *Cort v. Ash* determination. *See O'Brien* at p. 93,707; *Lowder* at p. 91,257–58. Such a conclusion, however, contradicts the Seventh Circuit's observation in *Indiana National Corp. v. Rich,* 712 F.2d 1180 (7th Cir.1983) as to the intended beneficiaries of the CBCA. Although the Seventh Circuit has apparently never addressed the question of a private right of action under the CBCA, the Seventh Circuit has had the occasion to consider the issue of the intended beneficiaries of the CBCA and observed that the CBCA disclosure and approval provisions appear "to be aimed at the protection of the depositors of the bank, not of its shareholders, as well as the protection of the general public against monopolization of the banking industry." *Id.,* 712 F.2d at 1186.

Similarly, the Ninth Circuit, directly addressing the issue of the existence of a private right of action, held that the first three criteria of the *Cort v. Ash* test were not satisfied. The Ninth Circuit held that: "sections [§ 1817 and § 1818(a)] were not intended for the special benefit of the shareholders, there is no indication that Congress intended to create a remedy for the special benefit of the shareholders, and that a private remedy for the shareholders

would be inconsistent with the legislative scheme." *Harmsen v. Smith,* 542 F.2d 496, 503 (9th Cir.1976).[4]

By forging the comments in the legislative history concerning the need to shield the general public into a sword by which financial institutions may wield off "undesirables" the *O'Brien* and *Lowder* courts have subverted the legislative intent of the CBCA, particularly Congress' expressed desire that federal agencies with particular expertise in this area should determine when "undesirables" will be prevented from controlling insured financial institutions by disapproving such acquisitions. *See* 12 U.S.C. § 1817(j)(7)(C).

Plaintiff in this case is a mere shareholder, making his case even less compelling than that of the financial institutions in *O'Brien* and *Lowder.* In any event, the facts of this case are more similar to those in *Quaker City National Bank v. Hartley,* 533 F.Supp. 126, 127 (S.D.Ohio 1981) where plaintiff, a banking institution, alleged that defendants had pooled their stock holdings in the bank forming a "group" that had effective control of the bank and that this group did not report the acquisition of such control in violation of the disclosure requirements of the CBCA. The *Hartley* court rejected the plaintiff's claims under the CBCA holding that a private right of action could not be read into the CBCA statutory scheme. In rendering its opinion, the *Hartley* court expressly rejected the *Lowder* analysis.[5] Moreover, this court finds compelling the analogy that was drawn by the *Hartley* court to the Bank Holding Company Act ("BHCA"), a statutory enactment under which the Supreme Court rejected a private right of action thirteen years before Congress enacted the CBCA. If Congress was displeased with

---

505 (9th Cir.1976), *cert. denied,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).

4. Apparently, the only other circuit to consider the availability of a private right of action under the CBCA is the Tenth Circuit and they reserved ruling on the issue in *Central National Bank v. Rainbolt,* 720 F.2d 1183, 1185–86 (10th Cir. 1983).

5. *See also, Ameriwest Financial Corp. v. Sowell,* No. 85–1277BB, Slip op. (D.N.M. October 4, 1985) [Available on WESTLAW, DCTU database] (rejecting the *O'Brien* and *Lowder* private right of action analysis under the similar disclosure provisions applicable to savings and loan institutions).

the Supreme Court's interpretation that the related BHCA provisions do not allow for private actions, Congress would not have framed the CBCA in much the same terms as the BHCA. *See Whitney National Bank v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 418, 85 S.Ct. 551, 556, 13 L.Ed.2d 386 (1965) (concluding that Congress did not intend for private cause of actions under the BHCA). *Accord Marx v. Centran Corp.*, 747 F.2d 1536, 1549–50 (6th Cir.1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985) (holding no private right of action under BHCA); *ORBANCO, Inc. v. Security Bank of Oregon*, 371 F.Supp. 125, 129 (D.Ore.1974).

Finally, both the *O'Brien* and *Lowder* courts asserted that a private right of action for injunctive relief is necessary otherwise there would be no means by which to prevent parties from circumventing the CBCA requirements. *See O'Brien* at p. 93,707; *Lowder* at p. 91,258. Such a conclusion is unfounded. Injunctive relief is clearly available to the Federal Deposit Insurance Corporation ("FDIC") to enforce the CBCA provisions. In fact, the FDIC has brought injunctive actions to compel compliance with the provisions of the CBCA. *See e.g. Federal Deposit Insurance Corp. v. D'Annunzio*, 524 F.Supp. 694 (N.D.W.Va.1981) (where the FDIC sought much the same relief as plaintiff is asking here).

Moreover, the court notes defendants' allegation that the appropriate federal agency has been alerted to the issues raised by plaintiff's complaint and has taken sworn testimony of witnesses but has not yet issued its findings or decisions. An allegation that has not been denied by the plaintiff. For this court to intercede at this juncture would certainly cause interference in the operation of these Congressionally established procedures.

■ Applying the four factors set forth in *Cort v. Ash,* the court must conclude that Congress did not intend a private right of action to exist for violations to the CBCA. Therefore, Count I of plaintiff's complaint must be dismissed.

Federal jurisdiction for this complaint is also premised upon the allegations contained in Count III that the Racketeer Influenced and Corrupt Organizations Act ("RICO") was violated by the defendants. As to the propriety of these claims, the court is helpfully guided by two very recent decisions by the Seventh Circuit, *Lipin Industries v. Lee,* 803 F.2d 322 (7th Cir.1986) and *Morgan v. Bank of Waukegan,* 804 F.2d 970 (7th Cir.1986).

Plaintiff alleges in Count III of the complaint that the Siensa Group in concert with defendant Paetow has engaged in a "pattern of racketeering activity" as defined in the RICO statute and in violation of subsections (b), (c) and (d) of 18 U.S.C. § 1962. Mail and wire fraud are the alleged predicate acts. Although the court believes that the alleged mail and wire frauds have not been pled with sufficient particularity,[6] the complaint is defective for a more substantive reason. Accepting the allegations that the mail and wire fraud statutes have been violated, the court is unpersuaded that the requisite "pattern of racketeering" can be shown given the underlying facts of this case.

Not unlike *Lipin Enterprises v. Lee,* this case fundamentally involves a single trans-

---

6. *See Haroco v. American National Bank & Trust Co. of Chicago,* 747 F.2d 384, 405 (7th Cir.1984), *aff'd per curiam,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (holding that Rule 9(b) Fed.R.Civ.P., requiring allegations of fraud to be pled with specificity, applies to fraud allegations in civil RICO complaints); *Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir.1975) (holding Rule 9 requires a "brief sketch of how the fraudulent scheme operated, when and where it occurred and the participants"); and *Baselski v. Paine, Webber, Jackson & Curtis, Inc.,*

514 F.Supp. 535, 540 (N.D.Ill.1981) (Rule 9 requires the complaint to set forth "the time, place and contents of the allegedly false representations"). Plaintiff's complaint speaks of "many misrepresentations" made over the interstate telephone lines and through the United States mails, but does not specifically detail any of the false representations that were allegedly made and does not at all delve into the specifics of how and when the interstate telephone lines and the United States mails were used to advance the scheme.

**1038**

action to purchase stock. Plaintiff complains in Count III that the defendants purchased additional shares of Palos Bank stock in November, 1985 without informing the shareholders of his willingness to purchase those shares at a higher price than that paid by defendants and that the defendants engaged in "false negotiations" to sell plaintiff defendants' stock holdings in Palos Bank. The fact that there were many alleged fraudulent acts committed by the defendants in their scheme to "defraud plaintiff by means of false and fraudulent negotiations" does not in and of itself create a pattern of racketeering activity. As the Seventh Circuit recognized, "a greater number of possible fraudulent acts does not make these predicate acts ongoing over a period of time so as to constitute separate transactions that are distinct in time and place." *Morgan v. Bank of Waukegan, supra,* 804 F.2d at 976. All of the alleged fraudulent acts are inextricably linked to plaintiff's efforts to purchase a controlling interest in Palos Bank and are directly attributable to the conduct of defendants in allegedly attempting to hinder plaintiff's purchase.

In analyzing the factual circumstances of this complaint, the court cannot conclude that the allegations support a finding that defendants' alleged activities constitute a "pattern of racketeering." This conclusion is based in good measure upon the factors set forth in *Morgan, supra,* 804 F.2d at 975 where the Seventh Circuit stated that some of the considerations include "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." The alleged predicate acts are not at all diverse. The number of acts is so indeterminate, due to the over generalizations and confusing nature of the complaint, that the court cannot determine whether this particular factor supports or works against the adequacy of the complaint. However, all of the predicate acts were committed pursuant to a single scheme with a relatively short and limited time period. Simply stat-

ed, when viewing this complaint in the most generous of manners, it cannot be said that the predicate acts are fairly characterized as being continuous in the sense that they were committed in separate transactions somewhat separate in time and place. *Id.* Therefore, Count III of the complaint must be dismissed as well.

CONCLUSION

For the foregoing reasons, Count I and III of the complaint are DISMISSED. The remaining counts of the complaint are state law claims over which the court does not believe it is appropriate to continue the exercise of pendent jurisdiction. Therefore, without considering nor deciding the remaining issues, the complaint is dismissed in its entirety.